TINA KUFNER, MARY SEGUIN, KATHY LEE SCHOLPP,
GLORIA JOHNSON *pro se*
*Plaintiffs (More to be Added)*

:

VS. : Case No.: _____

PAUL SUTTELL, in his individual capacity as Chief Judge
of the Rhode Island Supreme Court; JUDITH SAVAGE, in her
individual capacity as Associate Judge of the Rhode Island Superior
Court; JEREMIAH JEREMIAH, HAIGANUSH BEDROSIAN, in
their individual capacities as former and current Chief Judge of the
Rhode Island Family Court; RAYMOND SHAWCROSS, DEBRA
DISEGNA, STEPHEN CAPINERI, JOHN E. McCANN III,
MICHAEL FORTE, KATHLEEN VOCCOLA, in their individual
capacities as Associate Justices of the Rhode Island Family Court;
Estate of GILBERT ROCHA; LORI GIARRUSSO, DAVID
TASSONI in their individual capacities as "Mediation Specialist"
of the Rhode Island Family Court and Patronage-appointed
Guardians Ad Litem; SHARON O'KEEFE in her individual
capacity as Director of Intergovernmental Affairs and the
patronage-appointed Guardian ad Litem; the HEIRS of JUDITH
LUBINER, JOHN P. PARSONS, PETER KOSSEFF, BRIAN HAYDEN in their
Individual capacities as patronage-appointed "Court Psychologist";
KERRY RAFANELLI, PATRICIA MURRAY-RAPOZA, in their
individual capacities as patronage-appointed Guardians Ad Litem;
LINCOLN CHAFEE, in his individual capacity as Governor of the State
of Rhode Island; STEVEN M. CONSTANTINO, in His individual capacity
as Secretary of The Executive Office of Health and Human Services
of the State of Rhode Island; SHARON A. SANTILLI, in her
Individual capacity as Director of Child Support Office of the
State of Rhode Island; PRISCILLA GLUCKSMAN in her :
individual capacity as in-house counsel of the Child Support Office of
the State of Rhode Island; PETER F. KILMARTIN, REBECCA
PARTINGTON, in their individual capacities as the Attorneys General of
the State of Rhode Island; HUGH T. CLEMENTS, JR., in his Individual
capacity as Chief of Providence Police; STEVEN G. O'DONNELL, in his
individual capacity as Chief of Rhode Island State Police; The Rhode Island
Family Court; GERO MEYERSIEK; McIntyre Tate LLP; Adler Pollock
And Sheehan, P.C.; GINA RAIMONDO, in her individual capacity as R.I. Treasurer;
TEXTRON, Inc.; GIFFORD & PERKINS, P.C.; HOLT, GRAZIANO & HEBERG, P.C.;
Rhode Island Unlawful Practice of Law Committee; LYNCH & FRIEL, P.C., DOMINIK
KUFNER; DR. JENNY; SOPHIA MEYERSIEK; KARL SCHOLPP; KATHLEEN
SCHLOPP; MARIE E. LYONS, DAVID SACKS, in their individual capacities as Associate
Justices of the Probate and Family Court Department of Massachusetts; ANABELA

1

FRANCISCO, LAURIE SULLIVAN, ERIC INDYK, and JEFFREY MCNAMARA in their individual capacities as Massachusetts Social Worker of Department of Social Services; MICHAEL GREENBERG, In his individual capacity as Judge Sack's patronage appointee "Children's Law Project Attorney"; JOHN JOHNSON, in his individual capacity as Chief of Probation; BRENDA DOUGLAS, in her individual capacity as Visitation Supervisor; MARY SOCHA; BARBARA GRADY; NEVILLE BEDFORD; BARRY POLLOCK; ROBERT PARKER, CHARLES TAMULIVEZ, CHRISTOPHER HELIUIT, BRAD MARTIN, GERALD NISSENBAUM, AND DR JENNY from Hasbro Hospital; MAUREEN DICRISTAFARO, in her individual capacity as Guardian Ad Litem; KAREN LYNCH BERNARD; LAUREEN D'AMBRA in her individual capacity as Associate judge of Rhode Island family court
*Defendants (More to be added)*

## PLAINTIFFS' COMPLAINT FOR DAMAGES, JURY DEMAND AND SPECIAL GRAND JURY DEMAND

1. Plaintiffs who are mothers with no prior criminal, health, drug abuse or any prior public infraction records and whose children are trafficked and exploited for pecuniary gain, TINA KUFNER, MARY SEGUIN, KATHY LEE SCHOLPP and GLORIA JOHNSON, as their Complaint against the named Defendants, state as follows: (the suit in damages is brought against state officials in their individual capacities)

## PRELIMINARY STATEMENT FOR DEMAND FOR MONETARY DAMAGES

## INCORPORATING FACTUAL ALLEGATIONS

2. This is a civil rights, fraud, CIVIL RICO and HONEST SERVICES FRAUD action brought by mothers, whose children were criminally kidnapped from them for ransom, extortion and endangered by the defendants with probable cause of rape, child pornography, child trafficking, kidnapping, criminal ransom, against COURT CON, against an interstate pandemic of state actors raping mothers of their children, destroying the Natural Law's mother-child familial unit and depriving children of their mothers for pecuniary gain, invoking federal diversity jurisdiction, a substantive due process action in part, brought by the Rhode Island, Texas, Massachusetts and New York Plaintiffs, pro se, seeking **monetary** damages for the pre-agreed executive actions and inactions that include a scheme to maintain certain <u>extortionate</u> under-color-of-state-law state programs or facades without bona-fide chartered programs, through <u>fraud,</u> in a scheme and for the purposes of illegally procuring federal funding and defrauding the United States, in a scheme and for the purpose of maintaining insider state patronage network and organizations that is customary in Rhode

2

Island and Massachusetts, including lobbyist firms and participating firms, the pre-agreed RICO syndicate judicial status quo, the quasi-judicial actions through the Rhode Island Thomas Fay Institutionalized Insider Court Network Empire Patronage Appointed for Kick-Backs and Bribery, through the Rhode Island and Massachusetts' referrals of criminal investigations to civil family courts resulting in inactions that endanger minor-age child victims for pecuniary gain via procurement of federal funding for civil programs and kidnapping children in a scheme to charge, sanction, force, threaten, or hold mothers for ransom to pay absorbent amount of fees just to see one's children (herein named judges and their patronage-appointed "arms of the court" who pay them kick-backs), and impermissibly abusing patronage relationships and state committees purposely staffed with patronage appointees, including former lawyers violative of ethics rules and who were disciplined and fined, in a scheme to thwart, intimidate and subvert the Plaintiffs' exercise of their Constitutional rights to petition the courts and Federal Article III for redress, to thereby retaliate against the Plaintiffs for seeking redress through court con, and the professional standards that **shock the conscience** in frequent, routine, systemic and total due process violations which are against the interest of the Public and to our entire Judicial System, intentionally depriving the Plaintiffs of their intangible right to honest services and fundamental right to due process, brought pursuant to the Supremacy Clause of Article VI of the United States Constitution, the Commerce Clause (Article I, Section 8, Clause 3), the Necessary and Proper Clause (Article I, Section 8, Clause 18), 42 U.S.C. § 1983, §1985, §1986, §1982 and §2000d *et seq.*, 18 U.S.C. §1961 *et seq.* (Civil Rico), 28 U.S.C. § 1332, and 28 U.S.C. § 2201 *et seq.*, and 18 U.S.C. sec. 1346, **seeking monetary damages and tort damages** due to negligence and intentional negligence against the corrupt Rhode Island and Massachusetts defendants for decades' long and on-going scheme to deprive the Plaintiff mothers of their intangible right to honest services and fundamental due process rights; for discriminatory, fraudulent, extortionate, prima facie ransom demands; for retaliatory, conspiratorial, racketeering and facial unconstitutional human rights violation practices; for their policies and pattern of local public corruption customs, that are utterly devoid of requisite professional nor honest services standards or due process that **shock the conscience.** The predatory lawyer defendants preyed on victims of domestic violence and abuse.

## **PARTIES**

## A. Plaintiffs

### Tina Kufner

3. Tina Kufner is the natural/biological mother of two sons, JK (14 years old) and MK (12 years old). The Plaintiff Tina Kufner raised her two sons since their birth. The Plaintiff Kufner had noticed signs of sexual molestation, rape, incest, pedophilia, assault and battery displayed by her sons by blood their stool for over one week swollen and redden anus, infections in and around their mouths such as herpes, pains when walking, strange bacteria's found in stomach and in their mouth, since 2006 persistent eye-twitching, by 2005 ongoing bed-wetting (only at fathers) hyper activity, trauma, sticking objects in anis (2006), night terrors, adult language, imitating father pee pee games, genital, strange bruises on body and neck (2006), unexplained back hips injury, strange drawing of dragons with sticks in mouth, naked dolls tied together naked with belt found in playroom, drawings (red and black), invisible friend coming to visit them at night and having parties, sudden anger and fear of their father, and sudden fear of being kidnapped by the father (actually the father did kidnap the children for over 20 days in February 2006). In 2006, Mrs. Kufner also discovered a series of photographs taken by her ex-husband of nude photographs of her sons bending over with their anus spread and displayed scrotums and penis. Living in Germany at the time and unable to speak or understand the language fluently, Tina traveled to Rhode Island in 2007 to report to the local Cumberland Police, the F.B.I. and to state police.

4. Tina's ex-husband Dominik Kufner, at their first meeting in Hong Kong during one of Tina's business trips, admitted to being sexually abused by his own father, and promised that he would never do to his own children what his father did to him and his sister. He initiated a malicious scheme to thwart Tina from pressing criminal charges of child molestation, sexual assault on a child and rape against him either in Germany or in the United States, and so filed a fraudulent ex-parte civil action pursuant the Hague Convention on International Child Abduction at the United States Federal District Court of Rhode Island to unlawfully interfere with the on-going criminal investigations into his actions against his own children. Owning a private international textile conglomerate that showed net profits of $500,000 in 2007, Dominik Kufner first hacked and drained all of Tina's business bank accounts as soon as her first child had been born, including her previous fashion designing business accounts in the United States, so that Tina no longer had access to any funds or

money of her own to defend herself, and then initiated concurrently over 40 cases against Tina in both countries simultaneously non-stop for a total of 5 years , bribed judges and initiated 3 different proceedings to demand attorneys fees against Tina for the same Hague Convention legal fees proceeding in Rhode Island from 2007 -2010, and procured three different judgments from three different courts (2 in Germany, 2 at the Federal District court of RI on in May 2007 and another in 2010 that can be used as 2 separate Orders for legal fees as they had been so intentionally written as such by the United States Federal District Court of Rhode Island of over $300,000, and all in violation of due process, no notification, no hearing, no ability to file a complaint or motion for Relief against the Orders, in fact Tina living in Germany and not in the United States at the time the Court granted these Orders. Tina accidentally stumbled upon these Orders first by calling the District Court and in 2013 happened to go there for a totally different reason after relocating back to the States in 2011, the United States Federal District Court denied Tina's Motion for Relief on both counts and continues to grant legal fees for the same team of lawyers that represent Dominik's bogus Hague Convention proceeding, by double dipping using the long arm law, cross border jurisdiction and countries, submitted legal fees not to Dominik, but to Kufner textile offices in Canada, Munich, and in South Carolina constituting TRIPPLE billing. The objective of the scheme and enterprise con was to thwart criminal investigations into his rape of Tina and her children, procure children through court con so that he can have unfettered access to his prey and molest the children, and bankrupt Tina through stealing her marital property, empty their accounts, bribe judges and the corrupt Rhode Island court con enterprise participants, so that Tina could not protect her children or interfere with his unfettered access to her children for grooming minor age child for child pornography, molestation, and all forms of abuse imaginable, while increasing the abuse onto Tina long after he acquired custody of the children in the US, after he could not manage to obtain it in Germany in 2007, by finding attorneys and Judges that not only intentionally and neglectfully violated due process, ex-parte chamber conferences were held without Tina's knowledge, ex-parte conferences held go on and off the record, Judges granting Orders based on no hearings held. Guardian at Liam's has been assigned without holding a hearing or the ability for Tina to object, including the ability to go against the Guardian at Litem's Reports, in fact the report itself the Judge Orally denied Tina to have a copy of including the report from Dr Jenny, also contracted by the GAL via Oral Orders and Gage Orders. The GAL, who had no subject

matter jurisdiction to issue orders, transferred custody from Tina to Dominik based on Tina staying in a hotel with her children. Tina had been denied court transcripts on Appeal by the United States Federal District because Tina just could not afford it, and she was denied in forma pauperis, alimony payments garnished by the GAL to pay the GAL without a court order and without subject matter jurisdiction, and all the attorneys. All this rape and pillage occurred replete with Procedural and Substantive Due Process Violations, holding Court hearings without adequate notice to Tina.

Denial of a right to a hearing or to present (significant) evidence, Admission of a GAL report without the opportunity to cross examine the GAL, or Dr Jenny report, Admission of a custody evaluation without the opportunity to cross examine the custody evaluator, Denial of access to the court as a sanction for nonpayment of fees/costs when the litigant could not pay them. advocacy by a child's representative on behalf of child which contradicts the children's express wishes to stay and live with their mother, the effective or functional termination of parental rights indefinite suspension based on bogus reasons of all contact and all without meeting the clear and convincing standard required in Stanley v. Illinois, 405 US. 645 (1972, and Functional deprivation of parental rights completely cut off of access to children for over 6 years without finding of unfitness as required under Stanley v. Illinois 405 U.S. 645 (1972) . In Violation of Tina's First Amendment rights by preventing Tina conditioning parental access to speak, see, or have access to the children and prevented by the court to abandon her beliefs about the abuse or expression the reality of the abuse to her or the children on the record, in fact threatened by the Court to be sanctioned if Tina filed motions and with prejudice if Tina speaks about domestic Violence, to present the criminal authorities as witnesses to the photographs being identified as child pornography. In effect, the family court enterprise and the Rhode Island federal court threatened Tina with sanctions and abduction of her children from exercising her right to report crimes of domestic assault, domestic rape, sexual molestation of her sons and altogether suppressed allegations and evidence of criminal acts from being admitted into evidence in court. Tina is filing herewith a notice of felony.

Mary Seguin

5. Mary Seguin is the natural/biological mother of two daughters, S.S. (14 years old) and J.M. (13 years old). The Plaintiff raised her two daughters since their birth. The Plaintiff has been blamed by the state family court judicial actors, R.I. family court enterprise participants Paul Suttell and Gero Meyersiek for causing the family court to be under federal justice department investigation and insurance fraud investigation since 2002. The Plaintiff has caused the Executive Office R.I. family court enterprise participants and the State of Rhode Island judiciary to be under U.S. Justice Department investigation when the Plaintiff reported the R.I. family court enterprise participants ' criminal violations of federal laws, defrauding federal programs and funds, and the Constitution in 2010, 2011 and 2012. The Rhode Island state actors were jailing children for status offenses in un-transcribed proceedings behind closed doors in a scheme of terror to fine the children's parents under color of law. Then, the Rhode Island state actors concealed these illegal jailings in order to turn around and apply for and receive federal funds under the federal Juvenile Justice Delinquency Prevention Act that served to provide funding to state programs aimed at DETERING states from jailing children for status offenses. This is a central enterprise con by Rhode Island: illegally terminate rights in terror proceedings in order to extort private payments of fines and fees and then turn around and double dip into federal funding for social programs originally aimed at providing social services to the citizenry which the state is tasked with administering. Punished by the R.I. family court enterprise participants in retaliation for reporting their court con and defrauding the United States, embezzlement and turning around to terrorize mothers and children to double dip through extortions of fines and fees in exchange for constitutional rights removed in sham proceedings, the Plaintiff Mary Seguin, who had physical placement and custody of her two daughters since their births until January 2010, had her custodial rights and physical placement of her children summarily removed by the R.I. family court enterprise participant Michael B. Forte, in ex-parte communication with Gero Meyersiek and his agent, Barbara E. Grady, esq., through an "emergency" ex-parte deprivation procedural framework routinely abused in the state family court, in violation of federal and state laws, pursuant to insufficiently pleaded facts or basis in law, on mere speculation by the children's fathers that the Plaintiff had traveled out-of-state for work on certain days. Removal of all of the Plaintiff's parental rights was additionally predicated on the allegation that because her children resided in their home under the care of their decade-long live-in maternal grandmother who, because she allegedly

7

"**did not speak English.**" In addition to being a victim of fraud and retaliation by the Executive actors and Chief Judge Paul Suttell in his administrative capacity as Chief Judge of the R.I. Supreme Court, the Plaintiff is additionally a victim of harassing and bad faith state family court proceedings conducted to retaliate against the Plaintiff for exercising her right since 2002 to report the Rhode Island State judicial and executive actors for criminal fraud, racketeering, extortion under color of state law, embezzlement and embezzlement of federal funds in violation of the Juvenile Justice Delinquency Prevention Act. The Plaintiff is further a victim of harassing and bad faith state court proceedings conducted based on facial racial and ethnic discriminatory animus against the Plaintiff because her mother allegedly does not speak English. A total of THIRTY-TWO (32) such ex-parte deprivations were issued by the R.I. family court enterprise participant against the Plaintiff for retaliatory and racketeering motives, facially predicated on nothing other than she is moving or moved out of the state and her mother allegedly does not speak English, in a matter of 36 months, averaging one ex-parte deprivation every 4 weeks. The state family court proceedings do not involve any coercive state initiated proceedings of abuse or neglect against the Plaintiff. ***The Rhode Island Department of Children, Youth and Family Services is not involved in any of the proceedings***. (emphasis added). The Plaintiff remarried in 2010. She is domiciled in the state of Texas. Because the Plaintiff remarried an out of state resident and is domiciled in Texas, the R.I. family court enterprise participant found it easy to fraudulently issue (30+) ex-parte facially fraud domestic violence orders forbidding any contact with her daughters, with hand-scrawled "*without findings of fact or admissions*," and "Protect GAL Report" without basis in law or fact, for mere allegations that the Plaintiff made telephone calls, for the purpose of retaliating against the Plaintiff for reporting the R.I. family court enterprise participant ' systemic judicial abuse and violation of federal laws and the Constitution, and causing the R.I. family court enterprise participant and the State of Rhode Island's Executive Office to be investigated by the United States Department of Justice, including sending a delegation from Washington, D.C., on site to Rhode Island to investigate. The Plaintiff had physical placement and custody of her two daughters since their births until January 2010 when her custodial rights and physical placement of her children were summarily removed by the state family court justice Michael B. Forte, through an "emergency" ex-parte deprivation procedural framework routinely abused in the state family court, in violation of federal and state laws, pursuant to insufficiently pleaded facts or basis

in law, on mere speculation by the children's fathers that the Plaintiff had traveled out-of-state for work on certain days. Removal of all of the Plaintiff's parental rights was additionally predicated on the allegation that because her children resided in their home under the care of their decade-long live-in maternal grandmother who, because she allegedly "did not speak English," the children's best interests were jeopardized and therefore the Plaintiff's custody and parental rights should be removed on ex-parte. Because the Texas Plaintiff reported to federal law enforcement agencies acts of racketeering, fraud and retaliation against the family court justices in 2002, 2004, 2005- 2006, 2010, 2011 and 2012, the R.I. family court justices issued thirty-two (32) ex-parte deprivations without basis in law or fact, for mere allegations that the Plaintiff traveled out of state and that her mother does not speak English. The Plaintiff reported the family court justices' systemic practice of conducting deprivation proceedings without stenographic recording in family court to cover up illegal proceedings. The Plaintiff's tax returns show she was unemployed since 2008, received unemployment payments from 2008 to 2009, and did not work in 2010, 2011 or 2012 or 2013 either. The Plaintiff's tax returns further show she never earned $150,000. The Plaintiff has never been employed by Bank of America. The Plaintiff has been, as a matter of record before the state family court, physician-certified to be medically disabled suffering from pregnancy complications, under-went emergency surgery, suffering from post-surgery complications that render her unable to travel or work, since June 2010 to 2012.

  5a. Mary Seguin's case shows crystal clear that the Rhode Island family court enterprise is a RICO enterprise, that through fraud schemed to and did abduct Seguin's daughters under color of law for ransom demands of $50,000 by the GAL, who even wrote the demand within the GAL Report. The reason? Because the GAL speculated that Seguin took her children on a trip to Texas without telling the GAL. Since when do citizenry have to report their leisure trips to the state government for permission? The Constitution clearly states that the United States is not a Stalinist State. Because of this prima facie evidence of ransom demands written within the GAL report, defendant Bedrosian initiated a facially sham domestic violence ex-parte temporary restraining proceeding 8 months after Seguin moved <u>out</u> of Rhode Island to Texas, without personal jurisdiction, and renewing each 21-day "temporary" restraining order upon its expiration over thirty times from January 2011 to the present, as a way to "Protect GAL Report" that is hand scrawled on the sham orders from being forwarded to the F.B.I. and the U.S. Department of Justice as prima facie evidence of

criminal embezzlement, kidnapping, ransoms, obstruction of justice and extortion. The afore-described organized crime is clearly a RICO enterprise for pecuniary gain, as are the Plaintiff mothers cases described herein. In Rhode Island, supervised visitation has become a business enterprise, where mothers are shuttled often on ex-parte temporary orders without any stenographic transcription, into supervised visitation for nothing other than to charge them private fees to see their children, and then double dip into federal funding provided for supervised visitation under various federal programs. In Seguin's case, the family court RICO enterprise thought Seguin must be moving to Texas to marry a rich oil man, so the RICO enterprise demanded that Seguin pay $50,000....! And the ransom demand for $50,000 was written in the GAL report. After Seguin filed written criminal charges to the FBI and USDOJ, the family court enterprise initiated a sham DV proceeding against Seguin 8 months after Seguin moved out of Rhode Island, while Seguin was 8 months pregnant in Texas, on the verge of giving birth. Hand written on all the ex-parte 21-day temp restraining orders that were renewed upon the expiration of each, is "Protect GAL Report." This Court might ask why a DV order protects a THING, a GAL report. Of course, the GAL report contains the demand of $50,000 if Seguin wanted to see her daughters, making the sham DV proceeding, that is also funded by federal dollars, motivated and showing proximate cause that it is intended to cover up evidence of their RICO extortion and violation of the Hobbs Act and to dissuade Seguin under color of law to forward the GAL report to the F.B.I., interfering with an on-going criminal investigation.

State and federal courts are complicit in perpetuating, aiding and abetting this enterprise pecuniary-interest driven terror against mothers and children. Seguin is filing herewith in this case a notice of felony.

<u>Kathy Lee Scholpp</u>

6. Plaintiff mother Scholpp is an Air Force Sergeant who was called into active duty in February 2003. While she was on active duty, she still took care of her son as the primary care provider, given she only went to training on the weekends, when she placed one and half year old, in the care of her own mother, who was also a former Department of Social Services employee. Her ex-husband's sister, Kathleen, was a registered sex-offender. In the spring, Karl, her ex-husband, had visitation with his two children ages 2 and 5 from his first marriage. Karl had been an altar boy and his priest Father Michael Devlin had sent him to a

private school. (Father Devlin often offered victims an education in exchange for sex and was defrocked for child molestation in 2004.) Karl told Kathy Lee that he had sex with a neighbor boy for four years from ages 8 to 12, but told her that he was "over it". Karl brought 1½ year old H back from a visit at his paternal grandparents home, where Karl's sister Kathleen resided. H was crying due to his painfully red and swollen genitals. The paternal family stated they did not know how the injury occurred.

7. On another occasion, Karl cocked his fist at Kathy Lee, shouting, "Come here, I'll punch your f-cking teeth out." H witnessed this outburst.

8. In 2004, on February 22, 2½ year old H climbed onto Kathy Lee's head, pressed his diaper into her face and said,"Susck my cock, Mommy. Mommy, suck my cock." Kathy Lee first believed that Karl's sister Kathleen had sexually molested H, since Kathleen had been previously documented as a sex offender by the Department of Social Services (DSS) after she bit Karl's daughter on the buttocks, leaving bruises. Karl's first wife had a restraining order against Karl's sister and revealed to Kathy Lee that Karl's whole family is involved in incest.

9. On March 1, 2004 Kathy Lee reported H's disclosure to the state police in Russell, Massachusetts. The trooper Eric Fairchild said, "These things are very hard to prove." He made a mandated report to DSS, which refused to forward the case to the District Attorney.

10. Instead of investigating child rape, pedophilia, assault and battery by Karl's family, DSS social worker Anabela Francisco charged Kathy Lee with 'neglect' for continuing to live with Karl and for being late with immunizing H. Immunizing is a parental choice and can never be mandated by the State. H's maternal grandmother, former head of a state welfare department and an eye-witness to H's sexualized behavior, sent strongly-worded letters to DSS for failure to protect H. Her letters were ignored by social workers Laurie Sullivan, Eric Indyk, and Jeffrey McNamara among others. Kathy Lee's attorney Greg Hession insisted that Kathy Lee meet with DSS only in his office. Attorney Michele Lucier-Lazuk also worked on the case and recommended that Kathy Lee not report the abuse.

11. Between March 17 and May 1, 2004 on advice from her attorney, Kathy Lee and H sought protection at a domestic violence shelter. While there, Kathy Lee had a psychological evaluation by Scott Andrews who gave her a clean bill of health. Astonishingly, social worker Jeffrey McNamara told Karl where Kathy Lee and H were

staying. Karl's sister Kathleen began calling the domestic violence shelter, eventually forcing Kathy and H to move from the shelter. Karl filed for divorce during this time.

12. In April, 2004 Karl agreed to supervised visits with H, monitored by H's maternal grandmother. Karl was ordered to undergo a psychological evaluation, which he refused to do.

13. On July 8, 2004 Judge Marie Lyons gave Karl overnight visits with H. H's disclosures escalated. He began to display increased aberrant sexual behaviors, such as masturbating on furniture, with his teddy bear, and on people. He continued to disclose what Karl, his aunt Kathleen, and his half-sister Lauren (then aged 9) were doing to him. Sobbing, he begged and pleaded not to be made to go to see Daddy. His maternal grandmother tape-recorded his pleas.

14. Between July 2004 and December 2005, H's disclosures and injuries were documented by his pediatrician David Steele MD, a forensic investigator David Myers, a child therapist Jason Ravizza, his maternal grandmother, a friend of the family school nurse Ellen Carvalho, his daycare provider Mary Cook, and his mother Kathy Lee. Injuries to his genitals were recorded three times by his pediatrician. Five suspected child abuse reports from H's therapist were 'screened out' by DSS. None were reported to criminal law authorities for criminal investigation.

15. A log was kept of the child H's disclosures, which numbered over 150 incidents and were submitted as evidence to the court. H said, "Daddy licks my butt." "Kaffy (Karl's sister Kathleen) puts sweet stuff on her pee-pee, I lick it." "Wauren sticks blocks up my butt. Lauren thinks it feels good. It does NOT feel good!" ", and "Wauren won't swallow, I swallow." H would wake from sleep in terror shouting, "No! No, not my backdoor...Not me!"

16. H was mute during a Multi Interdisciplinary Team interview; upon its completion he told Social Worker Jennifer Lomelino, "If I talk, Daddy will kill Mommy."

17. On December 22, 2004 in a 2 day trial, Kathy Lee was called a "coacher" and "alienator" by Karl's attorney Mary Socha. Judge Lyons did not allow H's therapist to testify and gave Karl full physical and legal custody. On December 27, 2005 State police entered Kathy Lee's home through an unlocked cellar door as Karl waited outside putting a message

on her cell phone, "Bring him out, don't make this any harder than it has to be." Four and a half-year-old H was forced into Karl's custody at gun point.

18. Kathy Lee had no contact with H for 18 days, and then received supervised visitation for 4 hours at $300 per week with a court-mandated agency. She was required to submit 15 job applications per week even though she already was holding a job position as a letter carrier. She was ordered to undergo a psychological evaluation with a court-chosen psychologist Victor Carbone, and was told that no visitation would take place until she did so. While Karl had refused to have a psychological evaluation, Kathy Lee obeyed the order and had a clean bill of health.

19. In 2005 Judge Lyons continually denied Kathy Lee's motions for unsupervised visits.

20. Kathy Lee filed an appeal in December 2005 through her attorney Jim Smith. Kathy Lee discovered that Judge Lyons was continuously disciplined by the Massachusetts Judicial Misconduct and Disciplinary Committee since 2001, placed on unpaid leave and prohibited from sitting as judge, bit never properly and adequately disclosed to the public, akin to the Catholic Church's continuous placement of sexual abuser priests among unsuspecting church communities.

21. In 2006, from April though September, H was separated from any contact with his mother for 6 months due to visitation fee demands. The visitation service took Kathy Lee to small claims court, for over $600 owed.

22. On September 1, 2006 Judge Lyons was removed from the bench for her unethical behavior in the case after complaints to the Commission on Judicial Conduct. After Judge Lyons was removed, H was able to visit his mother supervised by the YWCA.

23. In 2007, Judge David Sacks continued to deny motions for unsupervised visits, ordered a guardian ad litem Linda Cavallero PhD chosen by Karl's attorney, and ordered Kathy Lee to pay $7,000 for the 64-page report. The GAL report stated, "give H back to mother immediately, four nights a week."

24. Judge Sacks ignored the report that he himself had ordered and appointed a "Children's Law Project" attorney, Michael Greenberg who refused to meet with Kathy Lee and stated "no unsupervised visits for mother."

25. The appeals court affirmed Judge Lyon's decision to place H with Karl.

26. In 2008, YWCA personnel reported H's continued disclosures to Karl, rather than to DSS, and falsified records.

27. Chief of Probation John Johnson, who made reports to the court although Kathy Lee was not on probation nor ever accused of a crime, filed a motion to force her to seek work with a temporary agency.

28. Kathy Lee filed a complaint against him on the advice of advocate Armene Margosian.

29. Kathy Lee was told by an employee at the visitation center that the complaint angered her visitation supervisor Brenda Douglas, a friend of the Chief of Probation. On August 16, 2007, during a supervised visit, Kathy Lee read a note from H's maternal grandmother that said, "H, Grandma and Grandpa love and miss you and hope to see you soon." This was the last time H saw his mother. The last thing H said to his mother was "Mommy, you can call me every day! I'll say that it's somebody else, I'll say that it's (one of his school friends)". Visitation supervisor Brenda Douglas suspended Kathy Lee's next visit and sent a letter of reprimand against her to the Chief of Probation.

29a. The Joint Stipulation, dated, December 1,2005, by reference is made a part hereof. Defendant Socha wrote this order, supposedly by Defendant Judge Marie Lyons. It purposely does not say what the "stipulation" is. Then, Defendant Smith and Defendant Socha went into the file and wrote in: "Kathy Lee Scholpp shall not be left alone with the parties' minor child, or participate in his child care." instead of: "Kathleen Marie Scholpp shall not be left alone ..." This constitutes intentionally tampering with the record.

29b. The most startling aspect of the case is that the divorce proceedings is LISTED AS "UNCONTESTED On Feb 2, 2006, defendant Smith contacted defendant Socha requesting written confirmation of the terms of the stipulation, specifically, that Karl L. Scholpp's sister, Kathleen Marie Scholpp, would not be left alone with the parties' minor child, H Scholpp, and would not participate in the child care of H Scholpp. (See Exhibit B).

14

29c. On Feb 7, 2006, defendant Socha to Smith: I do acknowledge that clause #9 was added to the "Uncontested Facts" stating that Kathleen Marie Scholpp would not be left alone with the parties' minor child, H Scholpp, and would not participate in the child care of Holden Scholpp. This was a deal made in exchange for Plaintiff Kathy Lee Scholpp not calling Kathleen Marie Scholpp to the witness stand.

29d. Reference DSS Social Worker Aimee Arizmendi's report of 5/29/2003, investigation where same alleged perpetrator, Kathleen M. Scholpp was supported of neglect and physical abuse of Karl Scholpp's daughters, Kirsten and Lauren Scholpp.

29e. Concerns of physical abuse and neglect by paternal aunt Kathleen M. Scholpp were brought up and resulted in a support of these allegations. (YET, KATHLEEN IS RAISING HOLDEN) Mother (Lizbeth Scholpp) has secured a restraining order against Kathleen M. Scholpp and she will not be used as a caretaker for the children. Kathleen's teeth marks were found on Kirsten's rear end.

29f. The restraining order was in effect for a full year from 06/18/02 to 06/18/03.

29g. The GAL was provided with copies of all restraining orders, and yet did not call Kathleen on the lie that the R.O. was for "just one weekend..., perhaps it was a week, then she got an attorney and the charges were dismissed" (Ref. page 33)

29h. The defendant shall pay the plaintiff child support in the sum of eighteen and 46/100 ($18.46) dollars each and every week.

29i. Fifteen job applications per week. Karl gets tax exemption for minor child. Karl maintains medical insurance for minor child (which according to his financial statement is now Blue Cross/ Blue Shield and no longer Connecticare).

29j. <u>Psychological Assessment of Karl Scholpp.</u> The Plaintiff Scholpp attempted to resurrect her motion for a psych-eval (sex offender evaluation) on Karl Scholpp, as agreed to by temporary order on 04/14/04 and recommended by David Meyers' report. This motion was stated by Socha as 'dismiss' but Smith stated 'pass' in front of Sacks' bench.

29k. The Plaintiff also sought enforcement of the court order on Kathleen M. Scholpp, requiring proof of compliance with the order for the protection of Holden Scholpp, as addressed in court order dated 09/19/06; "Presence of Kathleen M. Scholpp paternal aunt with minor child".

29l. The Plaintiff filed contempt for their violation of this order, but was advised by Smith to drop it as it "would make you look bad and you had no pictures of Holden alone with her as proof".

29m. H was cloistered with his abusers with no outside observation or exposure to the community at Kathleen's home and Karl's apartment for nine months before being plunked in daycare in September. That is called "Tampering With the Witness".

29n. Plaintiff has a list of witnesses that shall be called.

Karl L. Scholpp; Jay Sutter; Carol Lee Holmes; Barbara E. Lee; (Holden's teacher) Susan Goldstein; Kathleen M. Scholpp; Catherine F. Scholpp; Fred Scholpp; Christine Scholpp; Mark Lavoie, former colleague of Karl's whose numbers are in Karl's rolodex, busted for internet child porn and cocaine; Fr. Michael H. Devlin, defrocked in 2004 for past child molestation, under whom Karl became an Altar Boy; Freddy Alamed, Karl's boyhood sex partner for four years; Y.W.C.A.; Fund for Hope and Healing (A Catholic Organization involved in the investigation of Fr. Michael Devlin; Robert Stacey, Lizbeth's latest husband, about whom H said "She threw him out. He was teasing Lauren. He stuck his nose up her butt!" (quoting his father); Mrs.Wayne DeCillis, Karl's cousin's wife. Reserve the right to call more, of course. A list of all exhibits: GAL Report, DSS Record (showing Karl L. Scholpp supported of Neglect), Jason Ravizza's Records, H Scholpp's current Pediatric and School Records; Fair Hearing verdict, withheld by DSS since February 8, 2006, Y.W.C.A. record of Karl's failure to produce H for Plaintiff Scholpp's visitation. Meanwhile defendant Karl perjured about his income: his net weekly income according to line 6 is $244.46. His total weekly expenses are $363.00. That leaves him -$118.54 in the hole per week. On top of that he has legal fees of potentially $13,100 and credit card weekly payments of $170 per week. How does he pay his credit card, lawyer, food, gas, uninsured medicals, if he's in the hole -$118.54 each week?

<u>Gloria Johnson</u>

30. Gloria Johnson filed claims in the Rhode Island Superior Court against Kosseff, Rafannelli and Lubiner for the afore-described court con of quack state-coerced psychological treatment, with Rafanelli as opposing counsel throughout six years or more of her case threatened, with Kosseff and Lubiner to put Gloria's children in Rachel foundation in Texas for "deprogramming" through experimental treatment. This type of radical Stalinist

16

Gulag state coercion court con has NO place in American society and is horrifying. What does Superior Court Judge Judith Savage do? She accused Gloria Johnson of unlawful practice of law helping her children to file their claims in Superior Court and ordered Gloria to be investigated by the Unlawful Practice of Law Committee that is staffed with lawyers who were disbarred in other states for unlawful practice of law! Subjecting Johnson to court con fabricated charges of unlawful practice of law, of course nothing came of the "investigation" by a committee staffed with disbarred lawyers discarded by other states, Savage dismissed Johnson's claims against Rafannelli under quasi-immunity theories. Savage retired from the bench in August 2013 leaving vacant a seat for which Rafannelli now seeks to fill. The allegedly quasi-immune Rafannelli had not just tried to refer Johnson's children to out of state experimental treatments for a buck, he also brought his own mother to forcibly enter Livingston's home under the guise of conducting a home study on Livingston, under false pretenses that his mother is a court personnel. Such is the caliber of candidates for the Rhode Island judiciary nowadays.

## B. Defendants

### PAUL SUTTELL

31. Paul Suttell is the Rhode Island Supreme Court Chief Judge. He is sued in his individual capacity as Chief Judge of the Rhode Island Supreme Court for damages. The defendant Paul Suttell is not sued in his judicial capacity, but is sued in his administrative and supervisory capacity, who is tasked, among other things, to supervise all lower courts, control lower courts' budgets, supervise the administrative function of Haiganush Bedrosian, including her administrative function to supervise all court stenographers in Rhode Island family court to make accurate transcriptions of court proceedings, and the administrative function of ensuring that lower courts do no engage in unlawful activities, including acts by all R.I. court employees of shredding of documents for pending or impending litigation, demands of $50,000 as a condition to see one's children, demands of $25,000 as a condition to see one's children in Texas, impounding of litigants' assets upfront calculated to award to patronage appointees with creative labels who allegedly "aid the court," issuances of facially fraudulent court orders that facially steals $10,000 from upfront-impounded litigants' assets to counsels of adversaries in a case where the lawyers both allegedly represent the interests of the parties' minor child, aiding and abetting of criminal insurance fraud, or maintaining facially fraudulent domestic violence proceedings using federal assistance funding against a

federal informant after she reported violations of federal law by state family court judges under his supervision, or conducting fraudulent child support proceedings, fraudulent parental right deprivation proceedings, or fraudulent domestic violence proceedings by any of the lower courts in retaliation against the Plaintiff for reporting federal law violations by the R.I. State judiciary agencies to federal law enforcement agencies. He is further sued in his individual capacity in non-judicial activities for conspiring and engaging in racketeering, fraud, money laundering and obstruction of justice acts under color of state law against the Plaintiff. He is further sued for his actions or inactions in leading the state court agency enterprise as it relates to the conspiracy and fraud allegations herein.

JUDITH SAVAGE

32. Judith Savage is a retired Associate justice of the Rhode Island Superior Court. She is sued in her individual capacity as Associate Judge of the Rhode Island Superior Court for damages.

JEREMIAH JEREMIAH

33. Jeremiah Jeremiah is the former Chief Judge of the Rhode Island Family Court. He is sued in his individual capacity for damages.

HAIGANUSH BEDROSIAN

34. Haiganush Bedrosian is the Chief Judge of the Rhode Island Family Court. She is sued in her individual capacity for damages.

RAYMOND SHAWCROSS

35. Raymond Shawcross is an Associate Judge of the Rhode Island Family Court. He is sued in his individual capacity for damages.

DEBRA DISEGNA

36. Debra DiSegna is an Associate Judge of the Rhode Island Family Court. She is sued in her individual capacity for damages.

STEPHEN CAPINERI

37. Stephen Capineri is an Associate Judge of Rhode Island Family Court. He is sued in his individual capacity for damages.

JOHN E. McCANN III

38. John McCann III is an Associate Judge of Rhode Island Family Court. He is sued in his individual capacity for damages.

MICHAEL FORTE

39. Michael Forte is an Associate Judge of Rhode Island Family Court. He is sued in his individual capacity for damages.

### KATHLEEN VOCCOLA

40. Kathleen Voccola is an Associate Judge of Rhode Island Family Court. She is sued in her individual capacity for damages.

### Estate of GILBERT ROCHA

41. Gilbert Rocha is deceased and a former Associate Judge of the Rhode Island Family Court. The Estate is sued for damages.

### LORI GIARRUSSO

42. Lori Giarrusso is a mediator employed by the Rhode Island Family Court and patronage appointed supervised visitation supervisor and Guardian ad Litem. She is sued in her individual capacity for damages.

### DAVID TASSONI

43. David Tassoni was a mediator employed by the Rhode Island Family Court and patronage appointed supervised visitation supervisor and Guardian ad Litem. He conned the Public by lying that he is a lawyer when he is not, from 1999 to 2011. He is sued in his individual capacity for damages.

### SHARON O'KEEFE

44. Sharon O'Keefe is sued in her individual capacity as Director of Intergovernmental Affairs and the patronage-appointed Guardian ad Litem

### HEIRS of JUDITH LUBINER

45. Judith Lubiner was the listed "Access and Visitation" of Rhode Island and its Federal Contract with the United States under the supervised visitation program under the Violence Against Women Act. She was the patronage-appointed court psychologist. Her heirs are sued in their individual capacity for damages.

### JOHN P. PARSONS

46. John Parsons is the patronage-appointed court psychologist and is sued in his individual capacity for damages.

### PETER KOSSEFF

47. Peter Kosseff is the patronage-appointed court psychologist and is sued in his individual capacity for damages.

### LAUREEN D'AMBRA