**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**TINA KUFNER and KATHY LEE SCHOLPP,**

**Plaintiffs,**

**v.**

**PAUL SUTTELL, et al.,**

**Defendants.**

**Civil Action No. 13-12864-DJC**

## MEMORANDUM AND ORDER

**CASPER, J.** **June 30, 2016**

For the reasons set forth below, the complaint is subject to dismissal. If plaintiffs Tina Kufner and/or Kathy Lee Scholpp wish to proceed with this action, they must, within 35 days of the date of this Memorandum and Order, show cause why the complaint should not be dismissed for lack of subject matter jurisdiction.

## BACKGROUND AND FACTUAL ALLEGATIONS

*Pro se* plaintiffs Tina Kufner and Kathy Lee Scholpp, self-described mothers who, along with their children, were parties to probate and family court proceedings in Rhode Island and/or Massachusetts, were granted leave to proceed *in forma pauperis* in the instant action. D. 24. Because Kufner and Scholpp are proceeding *in forma pauperis*, their eighty-one page complaint, D. 2, is subject to preliminary screening.[1]

[1]Because plaintiffs Mary Seguin and Gloria Johnson each failed to file a motion to proceed *in forma pauperis*, they were terminated as parties for failure to comply with the Court's December 31, 2014 Order. See D. 24.

The complaint seeks monetary damages and consists primarily of a recounting of events surrounding divorce and child custody proceedings in Massachusetts involving Scholpp and her son; as well as child custody proceedings involving Kufner and her two sons, including a petition filed in the Rhode Island federal court by Dominik Kufner pursuant to the Hague Convention on the Civil Aspects of International Child Abduction alleging that the sons were wrongfully removed from Germany by Kufner. See Kufner v. Kufner, 480 F. Supp. 2d 491 (D.R.I. 2007).

The plaintiffs allege a far-reaching conspiracy involving the children's fathers and their legal representatives along with the state court judges and court-appointed guardians, special assistants, social workers and psychologists. As best can be gleaned from the complaint, the result of the conspiracy is to extort money from plaintiffs and deprive them of their constitutional rights. See Complaint, D. 2, at ¶ 2. The complaint alleges that the defendants were involved in "a scheme to maintain certain extortionate under-color-of-state-law state programs or facades without bona-fide chartered programs, through fraud, in a scheme and for the purposes of illegally procuring federal funding and defrauding the United States, in a scheme and for the purpose of maintaining insider state patronage network and organizations that is customary in Rhode Island and Massachusetts, including lobbyist firms and participating firms, the pre-agreed RICO syndicate judicial status quo . . ." Id. Plaintiffs allege that the "time frame of the RICO enterprise activity, honest services fraud and fraud scheme starts at the very earliest in 1985 and spans to the present and is on-going." Id. at ¶ 93.

The factual allegations are presented in fifteen sections that are entitled (1) "bribery and kickbacks", id. at ¶ 94; (2) "federal funds thus defrauded," id. at ¶ 95; (3) "ex-parte termination of fundamental constitutional rights," id. at ¶ 96; (4) "law firms and lobbyist firms," id. at ¶ 97; (5) the "Cranston cabal," id. at ¶ 98; (6) "Rhode Island's unconstitutional Pettinatto factors enables

Quack Psych cabal," id. at ¶ 99; (6) the "cabal's quack psychologists, Lubiner, Kosseff, Parsons and GAL Raffanelli," id. at ¶ 100; (7) the "court mediators-supervised visitation double-dip cabal," id. at ¶¶ 101 - 105; (8) "court con coercing paying GAL patronage appointees who bring their families to invade the home, search and seize under false pretenses, for routine fabrication of inadmissible evidence and the routine destruction of evidence," id. at ¶¶ 106 - 108; (9) the "fundamental court con enterprise model," id. at ¶ 109 - 116; (10) private actors in "the court con," id. at ¶ 117-121; (11) plaintiffs report crimes to law enforcement," id. at ¶¶ 122(1) - 122(37); (12) "retaliation through bad-faith harassment proceedings in family court [Mary Seguin]," id. at ¶¶ 123 - 135; (13) "retaliation against United States veteran for reporting criminal charges of child rape, pedophilia, assault and battery," id. at ¶¶ 136 - 159; (14) "retaliation through bad-faith harassment proceeding in Superior Court including subverting claims [Gloria Johnson, Tina Kufner, Mary Seguin]," id. at ¶ 160 - 224; and (15) "Rhode Island is ranked the most corrupt state in the country," id. at ¶¶ 225 - 229. The complaint contains twenty-two counts under federal and state law. Id. at ¶¶ 229 - 277. Claims for the violation of plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983, are alleged in Counts I-IV, XI, XIII-XIV, XVI-XVIII. Plaintiff assert a fraud claim in Count V. Plaintiffs seek attorneys' fees and costs in Count VIII. In Count VI, plaintiffs allege violation of 42 U.S.C. § 1983 and 18 U.S.C. § 1346. Plaintiffs allege a violation of 42 U.S.C. § 1981 in Count VII. Count IX alleges conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(2), (3). Plaintiffs allege violation of 42 U.S.C. § 1986 in Count X. Count XII alleges violation of the Racketeer Influenced and Corrupt Organizations Act pursuant to 18 U.S.C. §§ 1964, 1962(c), (d), 1513(e), (f). Plaintiffs allege a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, in Count XV. Counts XIX - XXII are state law claims for intentional infliction of emotional distress, intentional negligence, breach of

fiduciary duty and false imprisonment. The complaint invokes "federal diversity jurisdiction." See id. ¶ 2.

The complaint names ninety-two (92) defendants, including judges, mediators, guardians ad litem, social workers and attorneys, including some employed by the state. Id. at ¶¶ 31-90.

**STANDARD OF REVIEW**

When plaintiffs seek to file a complaint without prepayment of the filing fee, summonses do not issue so that the Court may conduct a preliminary review of the complaint and determine if it satisfies the substantive requirements of Section 1915. 28 U.S.C. § 1915. This statute authorizes federal courts to dismiss a complaint if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). A district court may dismiss a complaint filed *in forma pauperis* "at any time" if the court determines that the action lacks an arguable basis in law or fact, seeks relief against a defendant who is immune from liability, or fails to state a claim. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the former § 1915(d)); 28 U.S.C. § 1915(e)(2)(b).

Rule 8(a) governs the substance of a complaint and requires a plaintiff to include in the complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum, it must afford the defendant(s) a "[‘]meaningful opportunity to mount a defense,'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).

When examining the sufficiency of the pleadings, the court considers whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). “Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quotation marks and citation omitted).

Although a complaint need not provide an exhaustive factual account, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678. Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Iqbal, 556 U.S. at 678; see Ocasio–Hernandez v. Fortuno–Burset, 640 F.3d 1, 12 (1st Cir. 2011).

In screening plaintiffs’ complaint, the Court recognizes that *pro se* pleadings are construed generously. Haines v. Kerner, 404 U.S. 519, 520 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d

5, 13 (1st Cir. 2004). Even with a liberal reading, the complaint is subject to dismissal for the reasons set forth below.

## DISCUSSION

I. Subject Matter Jurisdiction

At the outset, it appears that the court lacks jurisdiction over plaintiffs' claims. It is well recognized that a court has an obligation to inquire *sua sponte* into its own jurisdiction. See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). Federal district courts may exercise subject matter jurisdiction in accordance with congressional grants of authority such as for suits raising federal questions, 28 U.S.C. § 1331, and those involving diversity of citizenship and at least the minimum requisite amount in controversy, id. § 1332. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).

The complaint invokes this Court's diversity jurisdiction, however, the factual allegations suggest that this Court may not have subject matter jurisdiction over this action. To the extent the complaint alleges this diversity of citizenship, such jurisdiction is lacking under 28 U.S.C. §1332. "Diversity jurisdiction exists only when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant." Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005) (emphasis in original). Here, the plaintiffs, Massachusetts and Rhode Island citizens, allege claims against citizens of Massachusetts and Rhode Island. Because the parties are not completely diverse, there is no diversity jurisdiction under Section 1332.

The Court has considered federal question jurisdiction as to the federal claims asserted in the complaint. Here, plaintiffs seek damages based on the outcome of proceedings in the Massachusetts and Rhode Island state courts. Plaintiffs complain that the judgments in question are the result of fraud, extortion and/or denial of their constitutional rights. An examination of the

claims would require this Court to decide whether to award damages based on the conduct of all those persons involved in litigation before the other courts. Because of this, the civil RICO and civil rights claims are barred and this court lacks subject matter jurisdiction to hear them because a decision in plaintiffs' favor would undermine the state court judgments. See Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008) (stating that the Rooker–Feldman doctrine, "in broad terms, deprives the district court of subject matter jurisdiction over a final judgment of a state court"); Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (the Rooker–Feldman doctrine "bars parties who lost in state court from 'seeking review and rejection of that judgment' in federal court") (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 291); see also Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st Cir. 2005) ( noting that "[u]nder the federal law of *res judicata*, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action") (quoting Porn v. Nat'l Grange Mut. Ins. Co., 93 F.3d 31, 34 (1st Cir. 1996)).

To the extent the plaintiffs allege misconduct by the defendants that occurred outside of or separate from their conduct during the various state court litigation proceedings, there can be the rare situation where a federal plaintiff does not seek to undo a state judgment, but rather "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party[.]" Exxon Mobil Corp., 544 U.S. 280, 284. Here, it appears that plaintiffs' injuries are alleged to have resulted from the rulings made in the completed state court proceedings and thus this court lacks jurisdiction pursuant to Rooker–Feldman. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983). To the extent plaintiffs allege that their injuries resulted from actions that are distinct from

the state court judgments, the Court will examine those claims as independent federal question claims.

II. Absolute Judicial Immunity Bars Plaintiffs' Claims Against the Judicial Defendants

The claims asserted against the fourteen judicial officers are not legally cognizable because absolute judicial immunity protects judges from acts performed within the scope of his/her jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) (noting that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damage"); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (noting that absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 292 Mass. 187, 189 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law").

"'Absolute judicial immunity protects judges from 'civil liability for any normal and routine judicial act,' except those taken in the 'clear absence of all jurisdiction.'" Goldblatt v. Geiger, No. 10-cv-537-PB, 2011 WL 1362119, at *6 (D.N.H. 2011) (quoting Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)). "Judicial immunity from claims for damages 'applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive.'" Goldblatt, 2011 WL 1362119 at *6 (quoting Cok, 876 F.2d at 2).

Although the claims are asserted against all of the defendants in their "individual" capacities, there is no basis for concluding that the actions or inactions of the judicial officers were taken outside the scope of their jurisdiction. See Ricciuti v. Alander, No. 3:03-cv-708-CFD, 2004 WL 555235, at *2 (D. Conn. 2004) ( noting that "[a]cts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered

around a case pending before a judge"). The defendant judges are alleged, among other things, to have made appointments from one corrupt defendant to the next. These alleged actions, albeit alleged to be corrupt, are also alleged to have been part of judicial rulings and actions. Thus, the claims, asserted against the judicial officers in their individual capacities, based on based on actions those judicial officers took in their judicial capacities, are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii), because the Judges are entitled to absolute immunity.

III. Quasi-Judicial Immunity

Without the legal conclusions, the complaint fails to allege facts that the court-appointed guardians, special assistants, social workers, psychologists and mediators engaged in conduct that would not be shielded by quasi-judicial immunity. Several courts have held that attorneys, as well as social workers and others performing delegated functions intimately related to the judicial process, should be given immunity. See B.S. v. Somerset County, 704 F.3d 250, 262–66 (3d Cir. 2013) (absolute immunity shields child welfare employees from liability when they act in a quasi-prosecutorial capacity in formulating and presenting recommendations to the court with respect to a child's custody, even if the recommendations are made outside the context of a dependency proceeding); Ernst v. Child and Youth Services of Chester County, 108 F.3d 486, 495-96 (3d Cir. 1997) (joining Fourth, Sixth, Seventh, Eighth, and Ninth Circuits, the court concludes that caseworkers are entitled to absolute immunity because functions they perform in dependency proceedings are closely analogous to those of prosecutor, public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions).

IV. Plaintiffs' Claims Under the Racketeer influenced and Corrupt Organization Act

Plaintiffs assert civil claims against the defendants for violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c) ]." 18 U.S.C. § 1962(d).

A plaintiff establishes a pattern of racketeering activity by showing "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Predicate acts under the statute include "federal mail fraud under 18 U.S.C. § 1341; federal wire fraud under 18 U.S.C. § 1343; "any act or threat involving . . . kidnapping, . . . bribery[ or] extortion ... which is chargeable under State law and punishable by imprisonment for more than one year" as well as the bribery of public officials under 18 U.S.C. § 201. See 18 U.S.C. § 1961(1).

To succeed in a civil RICO action, plaintiffs must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (citations omitted). The plaintiffs must, of course, allege each of these elements to state a claim. Moreover, "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Here, the plaintiffs fail to plead predicate acts with the particularity required by Fed. R. Civ. P. 9(b). See New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987).

In addition to alleging the elements of a substantive RICO claim, plaintiffs must demonstrate that they have standing to bring a RICO-based causes of action. See Sedima, 473 U.S. at 496. The plaintiffs only have standing if, and can only recover to the extent that, they have been injured in their business or property by the conduct constituting the violation. Holmes v. Secs. Investor Prot. Corp., 503 U.S. 258, 267–68 (1992) (O'Connor, J., concurring in part and concurring in the judgment). "A plaintiff enjoys standing under section 1964(c) only if he can demonstrate (1) a violation of section 1962, and (2) harm 'by reason of' the violation." Willis v. Lipton, 947 F.2d 998, 1000 (1st Cir. 1991) (quoting Sedima, 473 U.S. 479, 495–96); In re Actimmune Mktg. Litig., 614 F. Supp. 2d 1037, 1053 (N.D.Cal. 2009) (holding, post Iqbal, that a plaintiff is required to plead "an ascertainable loss that is in direct relation to the alleged fraudulent conduct"). "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." Hemi Group, LLC v. City of New York, 559 U.S. 1, 9 (2010). Here, the link between the alleged RICO acts and the alleged injury is speculative, conclusory or indirect, so that the link is insufficient to establish proximate cause.

As best can be gleaned from the complaint, plaintiffs allege a massive RICO conspiracy. However, the complaint fails to allege any particular acts directed at the "business or property" of Tina Kufner or Kathy Lee Scholpp. Even if the plaintiffs allege an injury to business or property, a civil RICO plaintiff is also required to plead causation. Here, the complaint is deficient because it does not demonstrate an "enterprise," it fails to clearly identify two or more acts of racketeering activity, and it fails to establish that the events of which plaintiffs complain constitute a "pattern."

## V. Plaintiffs' Complaint Fails to State Plausible Civil Rights Claims

Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983, 1985, 1988. "Generally speaking, 42 U.S.C. § 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014) (quoting 42 U.S.C. § 1983). "A claim under § 1983 has two 'essential elements': the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citation omitted). "In a civil rights action as in any other action . . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Here, plaintiffs allege constitutional violations, however, the allegations are presented as legal conclusions and not supported by underlying facts; the complaint fails to set forth the "who, what, when, where, and why" allegations necessary to state a plausible claim.

A civil rights conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties "to inflict a wrong or injury upon another," and "an overt act that results in damages." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988). For a conspiracy to be actionable under § 1983, the plaintiff must prove that there has been an agreement and an actual deprivation of a right secured by the Constitution and laws. Id.; see Meuse v. Stults, 421 F. Supp. 2d 358, 363-364 (D. Mass. 2006) (citing Hamilton v. Arnold, 135 F. Supp. 2d 99, 102 (D. Mass. 2001)). To state a claim of conspiracy, the complaint must set forth facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an

unlawful agreement. See DM Research v. Coll. of Am. Physicians, 170 F.3d 55, 56 (1st Cir.1999) (allegations of conspiracy or agreement are insufficient). Here, other than conclusory assertions, plaintiffs fail to set out sufficient facts that suggest a conspiracy or agreement involving the dozens of defendants.

## VI. Plaintiffs' Complaint Fails to Comply with the Pleading Requirements of the Federal Rules of Civil Procedure

As noted above, Rule 8(a) governs the substance of a complaint and requires plaintiffs to include in the complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006) (quoting Educadores, 367 F.3d at 66). This means that the statement of the claim must "at least set forth minimal facts as to who did what to whom, when, where, and why." Id. (quoting Educadores, 367 F.3d at 68). Although the requirements of Rule 8(a)(2) are minimal, "minimal requirements are not tantamount to nonexistent requirements." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Despite the length of the plaintiffs' complaint, it fails to allege specific facts against each of the defendants as to support the plaintiffs' claims. The factual allegations encompass numerous claims against dozens of defendants, yet the complaint fails to provide a "short and plain statement of the claim" as to each defendant.

Because plaintiffs' complaint is insufficient for the reasons stated above, plaintiffs will be ordered to show cause why the complaint should not be dismissed for lack of subject matter jurisdiction. If plaintiffs fail to show good cause why this action should not be dismissed, this action will be dismissed.

## ORDER

Accordingly, it is hereby ORDERED that:

1) If Tina Kufner and/or Kathy Lee Scholpp wish to proceed with this action, they must, within 35 days of the date of this Memorandum and Order, show cause why the complaint should not be dismissed. Failure to file a timely response to this Memorandum and Order will subject this action to dismissal for the reasons stated above; and

2) No summonses shall issue pending further Order of the Court.

**SO ORDERED.**

**/s/ Denise J. Casper**
Denise J. Casper
United States District Judge